IRA GOODWYN V. STATE

No. 29,159. Ocober 9, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) November 13, 1957.

*McElroy & McElroy*, Center, for appellant.

*Fred Hudson, Jr.*, District Attorney, Center, and *Leon Douglas*, State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the punishment, five years in the penitentiary.

The testimony of the state's witness shows that following an argument between the appellant and the deceased during a dice game, the deceased told the appellant, who had an unopened knife in his hand, to put it in his pocket, come out of the house, and he would fight him with his fists. Appellant then said, "I will see you, boy," went to his car nearby, returned to the house with a .12 gauge shotgun and when the deceased went to the door, appellant said, "I will kill you," then shot deceased in the chest, which shot caused his instant death. No weapon was found on the body of the deceased.

The written statement of the appellant was introduced in evidence by the state, and it in part reads:

"Along about 3:00 this afternoon, Calvin Caraway owed

me $4.40 out of a $5.00 bill (which appellant had just won in a dice game). I asked Calvin to give me my money, but he told me, 'You goddamned sonbith, you get out of here.' I told him, 'I'll see you.' I had right then made up my mind to go to my car and get the shotgun. I was going to get my money or kill him, one or the other. This Caraway had done took my money for the last time. My car was some 150 feet from the house. I was in a little of a hurry, but I still walked to the car. When I got to the car, I reached in the back seat, got the gun and loaded it. *After I loaded the gun, I walked back to the H. O. Williams house with my mind made up to kill Calvin Caraway or anyone else that crossed me.* I got within about 12 feet from Caraway, who had walked out into the door, which was wide open. There was no screen door. Caraway was standing there in the door. *"I didn't bother even to ask for the money.* I told him, I'll get you for the way you done.' Then I leveled the gun on him and shot him. As he fell, he said, 'Well you got me.' He didn't say another word. After he hit the floor, I ran off. I shot to kill him * * * I would do it again."

Appellant, testifying in his own behalf, stated that deceased grabbed the money during a dice game, and he said to him, "You don't mean you are taking my money again?," then the deceased, with a knife in his hand, cursed him and replied, "I've done took it, and furthermore if you fool with me I'll put you where I put Oliver Smith" (a person the record shows to have been killed by deceased by stabbing him with a knife), and then he told the deceased that "You might not do what you said." Appellant further testified that he then went to his car, got his shotgun, and when he returned to the house he heard the deceased say, "Turn me loose, I ain't scared of him. I'll kill him;" that as the deceased came straight toward him with a knife, he shot him in the chest to prevent his attack with the knife because "he would have got me."

Appellant further testified that at the time he shot the deceased he knew that he had a general reputation for being violent and dangerous, and that he was a person reasonably calculated to execute a threat; also, that he had heard of numerous violent attacks by the deceased with a knife. This testimony was corroborated by several witnesses.

The evidence is sufficient to support the verdict of the jury.

Appellant complains of the state being permitted to read to the jury the following portion of his written statement:

"If I had had a loaded gun I would have killed him, too." to which he objected on the ground that it was prejudicial and shed no light on the case or the condition of the appellant's mind.

The sentence in said written statement next preceding the portion complained of reads:

"I said that I ran back (after he shot the deceased) to the car. When I got back to the car, Snuffy Christopher ran down there, and before I could reload the gun, Snuffy grabbed me and put his knife to my throat and made me throw the gun down."

Appellant's statement also reflects that when he returned to the house he had his mind made up to kill the deceased or "anyone else that crossed me." In view of the admission in evidence without objection of this threat and Christopher's attack on the appellant immediately after the shooting, and it appearing that Christopher was the person referred to when appellant said, "I would have killed him, too," we are unable to perceive any merit in the contention that the statement complained of shed no light on the case or the condition of appellant's mind. Further, it was admissible on the ground that it could be considered by the jury to defeat his explanation of the killing which he gave on the trial on the merits.

No error is shown by the sustaining of the state's objection to the question of appellant's attorney directed to appellant while testifying, "Would you have killed him if you hadn't been scared of him?" on the ground that appellant's answer thereto, if it had been allowed, is not shown.

Appellant contends that the jury should have been instructed on the issue of self-defense against a milder attack; the right to defend his property and the right to retake property belonging to him; the right to kill a robber while he is in his presence or while fleeing with the property.

The court charged the jury on the law of self-defense against the infliction of serious bodily injury or death.

In addition to appellant's testimony shown herein he further testified on the trial on the merits that he went to the car and

got his gun and returned to the house, because he wanted to talk with the deceased and reason with him and for protection.

The failure to give said charges does not show error because no issue was raised in the evidence to support any of them.

The complaint regarding the district attorney's argument cannot be sustained.

The bill of exception presented to the trial judge was refused and the court prepared his own bill. There are affidavits in the record supporting the bill refused and others supporting the trial court's bill. We have concluded that in view of the trial court's instructions to the jury to disregard it, the argument that was made was not such that the trial judge was bound to declare a mistrial.

We need not determine, therefore, which of the affidavits correctly show the argument that was made by the district attorney.

The other contentions presented by the appellant have been carefully considered and they do not reflect error.

The judgment is affirmed.

Opinion approved by the court.